UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
JUAN ROQUE, *pro se*,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Petitioner,　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　-against-　　　　　　　　　　　　　　　　　:　　04-CV-4337 (DLI)
　　　　　　　　　　　　　　　　　　　　　　　　:
WILLIAM PHILLIPS,　　　　　　　　　　　　　　:
Superintendent of Greenhaven Correctional Facility　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Respondent,　　　　　　　　　:
------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

　　　Juan Roque ("Roque" or "petitioner") was convicted in the New York State Supreme Court, Kings County, after a trial by jury, of conspiracy in the first degree on April 10, 1997. The trial court sentenced petitioner to a prison sentence of twenty-five years to life.

　　　The Appellate Division of the New York State Supreme Court, Second Department, affirmed the judgment on February 4, 2002. *People v. Roque,* 291 A.D.2d 417 (2d Dep't 2002). On June 18, 2002, the New York Court of Appeals denied petitioner's leave to appeal. *People v. Roque,* 98 N.Y.2d 680 (2002).

　　　Thereafter, petitioner filed two motions *pro se.* On June 10, 2003, petitioner moved to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20 claiming that the sentencing court improperly considered defendant's role in crimes for which he was acquitted. On July 3, 2002, the Kings County Supreme Court denied petitioner's motion. On October 29, 2003, the Appellate Division of the New York State Supreme Court, Second Department, denied petitioner's application for leave to appeal. The Appellate Division also denied petitioner's

1

application for a writ of error *coram nobis* to vacate his conviction on the ground of ineffective assistance of counsel, *People v. Roque,* 7 A.D.3d 818, 776 N.Y.S.2d 864 (2d Dep't 2004), and the New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Roque,* 3 N.Y.3d 680, 784 N.Y.S.2d 19 (2004).

Petitioner challenges his conviction through the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that the sentencing court improperly considered the murder and arson counts, even though the jury acquitted him of those crimes, and petitioner's appellate counsel provided him with ineffective assistance because he failed to raise an ineffective assistance of trial counsel claim on appeal. In his traverse, petitioner further claims that his right to a public trial was violated by his trial counsel's consent to a temporary closure of the courtroom. For the reasons set forth below, the petition is denied.

**I.     Summary of Facts**

**Background**

Petitioner was charged with conspiracy in the first and second degrees (N.Y. Penal Law §§ 105.17, 105.15), murder in the second degree (N.Y. Penal Law § 125.25[1]), and arson in the first degree (N.Y. Penal Law § 105.20[1]), in connection with petitioner's involvement in a crack cocaine conspiracy over a five-year period beginning in 1991 in the Williamsburg section of Brooklyn. (R. at 2261-62.)[1] Petitioner was tried by a jury in Kings County Supreme Court along with five other co-defendants each of whom had separate counsel. After a six-week trial, petitioner was found guilty of conspiracy in the first degree and acquitted on the other charges. (*Id.* at 3671-72.) Petitioner received a prison sentence of twenty-five years to life. (Sentencing Hr'g Tr. at 39-40.) Petitioner

---

[1]Page references proceeded by "R." refer to the minutes of the trial.

was represented by the same attorney at trial and on appeal. (Pretrial Hr'g Tr. at 3.)

*Relevant Events at Petitioner's Trial*

1. Closure of Courtroom for Testimony of Two Undercover Police Officers

On March 5, 1997, the government requested that the court close the courtroom during the testimony of two undercover police officers because both officers were then assigned as undercover detectives to the specific area where the narcotics transaction, which was the subject of the trial, had occurred. (R. at 2896.) The prosecutor explained that Undercover Officer 5529 was active as an undercover officer in the Williamsburg neighborhood and was assigned to the 90th Precinct, the precinct where the alleged conspiracy had taken place. (*Id*.) The prosecutor further explained that Undercover Officer 278 was a member of the Special Operations Unit and was a participant in a long-term undercover buy operation in the Brooklyn North Narcotics District, which included the 90th Precinct and Williamsburg. (*Id*. at 2897.)

In response, the court directed defense counsel to consult with their clients and to advise the court of any objections to closing the courtroom during the testimony of the two officers. (*Id*.) The court further directed defense counsel to alert the court if alternatives to closure existed. (*Id*. at 2897-98.) After a brief pause in the proceedings, the court inquired of each defense counsel, in turn, if his client objected to the closure. (*Id*. at 2898.) Each defense attorney, including petitioner's, responded that he did not object. (*Id*.) And none of the defense counsel asked the court to consider alternatives to closing the courtroom. The court then ordered that the courtroom be sealed during the testimony of the two undercover police officers. (*Id*.)

2. Jury Charge Related to Two Witnesses' Accomplice Status

During petitioner's trial, numerous accomplice and non-accomplice witnesses testified for

the government, including Yamantti Morales and Victor Velasquez. (*Id*. at 151, 1837.) On March 6, 1997, the court held a hearing to review the jury charges and did not include Yamantti Morales's name among the list of accomplice witnesses. (Charging Conference Hr'g Tr. at 46-47.) Petitioner's trial counsel did not lodge an objection when the court proposed submitting to the jury the issue of Victor Velasquez's accomplice status. (*Id*. at 47.)

On March 11, 1997, the trial court instructed the jury that they must consider eleven witnesses to be accomplices as a matter of law. Although the name "Jose Morales" appeared on the list, the name "Yamantti Morales" did not. (R. at 3551.) However, a person by the name of "Jose Morales" never testified at the trial, nor did any other witness with the surname Morales, except Yamantti. Petitioner's trial counsel did not object to this aspect of the jury instructions. (*Id*. at 3586-99.) With respect to Victor Velasquez, the court instructed the jury "to decide whether Victor Velasquez has participated in the conspiracy or reasonably participated in an offense charged based on the same facts, and if he did, then he is also an accomplice." (*Id*. at 3552-53.) The court did not enumerate a list of non-accomplice witnesses for the jury.

The court then explained the significance of a witness's accomplice status as it relates to the requirement and sufficiency of corroborative evidence under New York law. (*Id*. at 3553-55.) In relevant part, the court stated that, "the law requires that the testimony of an accomplice must be corroborative, corroborated by other evidence apart from the accomplice's testimony" and that the jury acts as the "sole judges of the sufficiency of this corroborating evidence." (*Id*. at 3553-54.) The court further instructed the jury that, if it deemed the corroborating evidence insufficient, it "must disregard the accomplice's testimony entirely," but, if deemed sufficient, it "may consider the testimony of the accomplice" in making its final decision. (*Id*. at 3554-55.) No objection to any

4

aspect of the jury instructions appears in the record. (*Id*. at 3586-99.)

During her testimony, Yamantti Morales detailed the nature and extent of her involvement in the organization. She testified that, at the age of fifteen, she sold crack cocaine that she had obtained from petitioner "about two times," and gave the proceeds from each of these sales to petitioner. (*Id*. at 1839-42.) On cross-examination, Ms. Morales admitted that she sold crack cocaine for petitioner at the age of sixteen, not fifteen. (*Id*. at 1868.)

Victor Velasquez testifed that, at the age of twenty-one, he briefly sold crack cocaine in the Brooklyn neighborhood of Greenpoint, and he worked as a "manager" recruiting people to sell drugs and supplying these sellers with narcotics. (*Id*. at 158, 373, 435.) However, as a child, Mr. Velasquez spent time in Williamsburg visiting his grandmother, and through that experience, he became acquainted with petitioner. (*Id*. at 175-76.) In 1991, Mr. Velasquez moved to Williamsburg to live with his cousin at 310 Bedford Avenue. (*Id*. at 171.) Shortly after moving, Mr. Velasquez testified that petitioner offered him a manager position within the drug organization as well as a percentage of the profits, and offered that the junior high school would provide reliable access to adolescent recruits. (*Id*. at 190.) Mr. Velasquez rejected the offer. (*Id*. at 197.) However, during his residence there, he directly observed from his fifth floor bedroom window crack cocaine sales and deliveries on the street corner controlled by petitioner. (*Id*. at 180.)

In 1995, Mr. Velasquez began working as a janitor cleaning the building at 314 Bedford Avenue. (*Id*. at 227.) While cleaning one day, he allegedly found crack cocaine vials on the floor, and later, when a man knocked on the building's front door inquiring about buying crack cocaine, Mr. Velasquez sold the vials to an undercover police officer. (*Id*. at 226-27.) Thereafter, the police arrested Mr. Velasquez. (*Id*. at 228.) Mr. Velasquez chose to plead guilty to a misdemeanor, and

in exchange for testimony regarding his knowledge of drug sales in the Williamsburg neighborhood, he did not have to serve jail time. (*Id*. at 230.)

3. Sentencing

At the conclusion of the trial, the jury convicted petitioner of conspiracy in the first degree, a class A-1 felony under N.Y. Penal Law § 105.17. In connection with petitioner's sentencing hearing, the trial court considered a presentence report,[2] dated April 2, 1997, and a sentencing letter,[3] dated April 7, 1997. The presentence report stated that "[defendants] maintained discipline and control within the narcotics trafficking organization, and discouraged competition from rival organizations, by threatened and actual use of violence, including murder, robbery and arson." (Presentence Report at 3.) The government argued in the sentencing letter that "the manner in which Roque conducted his business . . . lead to the unmistakable conclusion that he had a hand in the deaths of Vincente Flores and Mitchell Braithwaite. Although Roque cannot receive additional punishment for his involvement, the [c]ourt can and should consider these facts in developing his sentence on the crime for which he was convicted." (Sentencing Letter at 4.) With regard to the arson charge, the government further argued that "regardless of the jury's verdict, the testimony of the co-conspirator . . . should be considered by the court in developing a sentence for the defendant." (*Id*.)

During the sentencing hearing on April 10, 1997, petitioner's trial counsel objected to both the presentence report and the sentencing letter. He argued:

---

[2]The presentence report is Exhibit C to Defendant's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, Exhibit C.

[3]The sentencing letter is Exhibit A to Defendant's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, Exhibit C.

> I believe what the People have done here in their letters and recitations to the Court is utterly inappropriate and in absolute contravention to what the law is in New York State, in that what they're asking you to do is set aside the acquittals, find them guilty of what they were acquitted of, at least my client, and sentence them accordingly. It is absolutely improper. The law is clear. You cannot sentence somebody using as a basis for it acquitted crimes.

(Sentencing Hr'g Tr. at 24.) In response, the court stated:

> I do not intend to sentence any of the defendants for any of the crimes for which they were not convicted. I accept the defendants' arguments that they were acquitted of these crimes. Punishment is not appropriate for these crimes, notwithstanding the district attorney's position in this matter. I am therefore not considering the murders or the arson for sentence. I decline to do so.

(*Id*. at 35.) The Court further stated that, "[w]hile they are not held accountable for the crimes of arson and murder, there is no question there were violent acts in this neighborhood, where rival drug dealers were executed, a store was burnt out. Certainly their drug dealing contributed substantially to the destruction of this neighborhood." (*Id*. at 37.) With respect to petitioner, the Court found that "[as] the head of this organization . . . [h]e was responsible for all of the activities, recruitment, brought in all of these people, did not hesitate to use violence to enforce discipline in his organization. He has a previous felony conviction for criminal sale of a [sic] controlled substance. I see no reason to give him anything but the maximum, [twenty-five] years to life." (*Id*. 39-40.)

*Procedural History*

On appeal from his judgment of conviction, petitioner, through counsel, raised six issues: (1) the trial court's substitution of a juror without sufficient inquiry; (2) the trial court's charge to the jury as to the accomplice status of two witnesses; (3) the sufficiency of the non-accomplice testimony to corroborate the charge of conspiracy in the first degree; (4) the waiver of petitioner's right to a public trial; (5) the trial court's allowance of limited cross-examination of a witness and

7

refusal to strike the witness's testimony after he invoked his Fifth Amendment privilege; and (6) the excessiveness of petitioner's sentence. In affirming petitioner's judgment of conviction, the Appellate Division found that the trial court had properly dismissed the juror, correctly instructed the jury with respect to the testimony of the two alleged accomplices, and that their testimony was sufficiently corroborated. The Appellate Division further found that the defendant consented to closure of the courtroom, his sentence was not excessive, and the "remaining contentions . . . [were] either unpreserved for appellate review or without merit." *Roque,* 291 A.D.2d at 417. The Court of Appeals denied petitioner's application for leave to further appeal his criminal conviction. *Roque*, 98 N.Y.2d at 680.

On June 10, 2003, petitioner moved *pro se* in the Kings County Supreme Court to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20. Petitioner claimed that the sentencing court improperly considered the descriptions of petitioner's role in crimes for which he was acquitted, and the incorrect allegation of his involvement in an unresolved homicide case. The Supreme Court denied petitioner's motion finding that "neither of [petitioner's] claims is true." (Marrus, J.) The Appellate Division denied petitioner's application for leave to appeal the denial of the § 440.20 motion.

On November 26, 2003, petitioner moved in the Appellate Division for a writ of error *coram nobis*. In support his *pro se* motion, petitioner claimed that his appellate counsel (who was also his trial attorney) provided ineffective assistance by failing to raise an ineffective assistance of trial counsel claim on appeal. Petitioner based his claim on three alleged errors made by counsel at trial: (1) failure to object to the trial court's consideration of the murder and arson charges at sentencing; (2) consent to closure of the courtroom; and (3) failure to object to the trial court's decision to allow

the jury to determine the accomplice status of two witnesses. The Appellate Division denied petitioner's motion on May 24, 2004. *Roque,* 7 A.D.2d at 818. On August 4, 2004, the Court of Appeals denied petitioner's application for leave to appeal. *Roque,* 3 N.Y.3d at 680.

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

28 U.S.C. § 2254(d). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). However, in reviewing the state court decision, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### A. Defendant Effectively Waived His Right to a Public Trial

Petitioner argues that his writ of habeas corpus should be granted because his right to a public trial was violated when his attorney consented to a temporary closure of the courtroom during the testimony of two undercover police officers without first eliciting from petitioner his personal waiver

9

of his right to a public trial. Petitioner first raised this argument on appeal. The Appellate Division found that petitioner's defense attorney effectively waived petitioner's right to a public trial by consenting, in his presence, to the closure of the courtroom, after consulting with petitioner. *See Roque,* 291 A.D.2d at 417. Respondent contends that petitioner is not entitled to habeas corpus relief because the Appellate Division's conclusion was neither contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). The court agrees.

Although the Sixth Amendment guarantees defendants the right to a public trial, the public can be excluded if exigent circumstances require it. *See Waller v. Georgia,* 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L.Ed.2d 31 (1984). In order to justify a courtroom closure, "the party seeking to close the courtroom must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48. With respect to the first prong, the Second Circuit has repeatedly held that prosecutors have an overriding interest in protecting the safety and efficacy of undercover officers. *See Smith v. Hollins,* 448 F.3d 533, 539 (2d Cir. 2006); *see e.g., Brown v. Artuz,* 283 F.3d 492, 501-02 (2d Cir. 2002) (the "safety of a police officer working undercover surely constitutes an overriding interest"); *Gonzalez v. Quinones,* 211 F.3d 735, 738 (2d Cir. 2000) ("courts may properly order courtrooms closed during the testimony of undercover police officers, in order to protect both the officers' safety and their future effectiveness").

In the instant action, exigent circumstances, namely the testimony of two undercover police officers assigned at the time of their testimony to the same precinct where the defendants had

conducted their crack cocaine operation, clearly necessitated closure of the courtroom. The government advanced an overriding interest in arguing that temporary closure was necessary to safeguard the safety and future effectiveness of the undercover officers because not all of the participants in the conspiracy were in custody, and the defendants' friends and family members resided in the neighborhood in which the drug organization had operated. The closure was "no broader than necessary" because the courtroom was only closed during the testimony of the two officers. And defense counsel did not offer any requests for reasonable alternatives to closing the courtroom even though the judge solicited such requests.

Even assuming that exigent circumstances did not exist, petitioner waived his right to a public trial. When defendants personally waive their rights, the waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Plitman,* 194 F.3d 59, 63 (2d Cir. 1999) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L.Ed.2d 747 (1970)). Here, petitioner did not expressly waive his right to a public trial. However, the issue remains whether he "knowingly and voluntarily made an implied waiver of the right through his conduct." *Cohen v. Senkowski,* 290 F.3d 485, 491 (2d Cir. 2002) (citing *Clark v. Stinson,* 214 F.3d 315, 323 (2d Cir. 2000)).

Here, petitioner was present during the government's colloquy with the court regarding closure of the courtroom. In open court, the judge requested that defense counsel consult with their clients and advise the court of any requested alternatives. Petitioner then had the opportunity to consult with his attorney so that he was made fully aware of both the nature of the right being abandoned and the consequences of his decision to abandon it. After a pause in the proceedings, petitioner's trial counsel responded that he did not object to courtroom closure. Neither petitioner's

trial counsel, nor any other defense counsel requested a hearing, argued that the closure was too broad or suggested alternatives to closure. There is no indication in the record that either petitioner or his attorney did not understand the nature of the right being abandoned or the consequences of abandoning it. Moreover, the Supreme Court has determined that a defendant need not personally waive his Sixth Amendment right to a public trial because a defense attorney may constitutionally waive a defendant's right to a public trial by failing to object to the courtroom closure. *See Peretz v. United States*, 501 U.S. 923, 936 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960). Accordingly, a waiver may properly be inferred from petitioner's conduct and his attorney's failure to object.

**B.      Sentencing**

Petitioner next claims that his sentence was improper because it reflected the murder and arson counts, and the jury acquitted him of those charges. The Appellate Division found that this contention was without merit. *People v. Roque,* 291 A.D.2d 417 (2d Dep't 2002). Respondent argues that the claim fails to raise a federal question, and that the state court's decision denying defendant's sentencing claim was not contrary to, or an unreasonable application of, clearly established federal law. The court agrees.

Petitioner's contention that his sentence was improper fails to present a federal question because "[m]atters relating to sentencing and service are governed by state law and, accordingly, are not cognizable in a habeas corpus proceeding." *Gluckman v. Birns,* 398 F. Supp. 1343, 1352 (S.D.N.Y. 1975); 28 U.S.C. § 2254(a). The Second Circuit has held that "no federal constitutional issue is presented where . . . the sentence is within the range proscribed by state law." *White v. Keane,* 969 F.2d 1381, 1383-84 (2d Cir. 1992). Here, petitioner's sentence of twenty-five years to

life was within the range proscribed by New York law.  N.Y. Penal Law § 70.00(2)(a); (3)(a)(i).

Moreover, petitioner failed to establish that the state court decision was an unreasonable application of clearly established federal law.  The Kings County Supreme Court denied petitioner's § 440.20 motion to set aside the sentence finding that the trial court had not improperly relied upon the murder and arson counts in sentencing petitioner.  The record supports the Supreme Court's finding because the trial judge explicitly stated, "I do not intend to sentence any of the defendants for any of the crimes for which they were not convicted . . . I am therefore not considering the murders or the arson for sentence." (Sentencing Hr'g Tr. at 35.)  Rather, the judge considered the nature and extent of petitioner's involvement in the conspiracy, its damaging effect on the neighborhood and petitioner's previous felony conviction for criminal sale of a controlled substance in sentencing petitioner.  (*Id*. at 36-40.)  Accordingly, petitioner's claim is without merit.

### C.     Ineffective Assistance of Counsel

Petitioner's final claim is a violation of his Sixth Amendment right to effective assistance of counsel because his attorney at trial and on appeal failed to raise on appeal to the Appellate Division an ineffective assistance of trial counsel claim based on his own failure to object to (1) the sentencing court's alleged reliance on the arson and murder acquittals in imposing its sentence, (2) the closure of the courtroom during the testimony of two undercover police officers, and (3) the trial court's decision to permit the jury to decide whether two prosecution witnesses, Yamantii Morales and Victor Velasquez, were accomplices. Although counsel raised the second and third substantive claims of error on appeal, petitioner nevertheless maintains that appellate counsel was ineffective because he did not ask the Appellate Division to review the unpreserved claims, and did not allege that the absence of preservation rendered his representation at trial constitutionally deficient.

Petitioner's claim is groundless.

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail under *Strickland,* a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 689. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. The *Strickland* court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id*. at 694.

For the reasons set forth above, counsel's waiver of petitioner's right to a public trial was both reasonable and proper given that it was done in petitioner's presence and after consulting with him, exigent circumstances necessitated the closure, and the courtroom was only closed during the testimony of the two officers. Thus, counsel was not deficient in failing to include an ineffective assistance of counsel claim in his appellate brief because his own conduct had not fallen below an objective standard of reasonableness. Moreover, counsel included the substantive closure claim in his appellate brief, and the Appellate Division rightly found that he had effectively waived petitioner's right to a public trial. Therefore, petitioner's ineffective assistance of counsel claim fails because the alleged error did not have an adverse effect on his defense.

Furthermore, counsel's conduct was not constitutionally deficient with respect to sentencing. First, counsel objected at the sentencing hearing to the government's apparent reliance on the murder

14

and arson charges, of which petitioner was acquitted, as aggravating factors warranting the maximum sentence. The trial court responded by assuring the defendants that it would not consider any of the crimes for which they were acquitted in sentencing. Second, although counsel did not object to the imposed sentence during the hearing, on appeal, he argued that the sentence was excessive because petitioner's only prior conviction could not properly serve as an aggravating factor when that prior criminal act was committed in furtherance of the conspiracy at issue in the case. Furthermore, petitioner fails to address how the outcome of his trial would have differed if counsel had objected to the sentence or if he had, as appellate counsel, claimed that the absence of such an objection rendered his performance at trial deficient. Significantly, the Kings County Supreme Court denied petitioner's motion to set aside his sentence, pursuant to New York Criminal Procedure Law § 440.20, because petitioner's allegations that the sentencing court improperly considered his role in crimes for which he was acquitted were untrue, and the sentencing court did not commit error in sentencing him.

Lastly, petitioner contends that counsel's representation was ineffective because he first failed to object to the trial court's referral of two witness's accomplice status to the jury for resolution as a question of fact, and then failed to preserve the claim for appeal while subsequently raising the unpreserved claim of error on appeal. Even assuming that counsel's actions were deficient, petitioner's claim fails because he has not "affirmatively prove[n] prejudice." *Strickland*, 466 U.S. at 693-94. On appeal, counsel argued that the trial court committed reversible error when it referred the accomplice status of two witnesses to the jury for resolution as a question of fact. While noting that the claim was unpreserved for appellate review, the Appellate Division exercised its interest of justice jurisdiction and correctly held that the claim was meritless. *See Roque*, 291

A.D.2d at 417. More specifically, the Appellate Division stated that, "where different inferences can be reasonably drawn from the evidence produced at trial, the question of whether a particular person is an accomplice is a question of fact for the jury." *Id*. (citing *People v. Jeffries,* 122 A.D.2d 281, 282 (2d Dep't 1986)). Thus, Mr. Kousouros's failure to object did not prejudice petitioner because the trial court could have properly overruled any objection, and the Appellate Division reviewed the claim notwithstanding that it was unpreserved. Accordingly, appellate counsel was not ineffective in declining to put forth a claim of ineffective assistance of counsel claim because any such claim would have been frivolous.

**VI.    Conclusion**

For the reasons set forth above, Juan Roque's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED:    Brooklyn, New York
          March 12, 2007

$\qquad\qquad$/s/$\qquad\qquad$
DORA L. IRIZARRY
United States District Judge